THIS ORDER IS APPROVED.

Dated: December 08, 2009



_____
**JAMES M. MARLAR
Chief Bankruptcy Judge**
_____

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>PATRICK S. O'BRIEN and DENISE L. O'BRIEN,<br><br>　　　　　　　Debtors.<br><br>LOWELL JENSEN, an individual,<br><br>　　　　　　　Plaintiff,<br>vs.<br><br>PATRICK S. O'BRIEN and DENISE L. O'BRIEN, husband and wife,<br><br>　　　　　　　Defendants. | Chapter 7<br><br>No. 4:09-bk-00587-JMM<br><br>Adversary No. 4:09-ap-00277-JMM<br><br>**MEMORANDUM DECISION**<br><br>**(RE: DEBTORS' MOTION FOR**<br><br>**SUMMARY JUDGMENT) (DN 12)** |

## BACKGROUND

This non-dischargeability action arises out of a real estate purchase contract. In a somewhat unorthodox transaction, Mr. Jensen responded to an ad placed on "craigslist" by the Defendants. After brief meetings and discussions, the Defendants sold the property to Mr. Jensen for $175,000.

The sale was evidenced by a contract drawn up by the parties; no title company was involved; apparently no separate note or deed of trust was recorded; no deed was recorded to Mr. Jensen; an underlying mortgage remained on the land, with a balance still due of approximately $92,000; no policy of title insurance was issued to Mr. Jensen; neither party apparently consulted

with an attorney; and the property was titled in the name of Defendants' corporations, not the Defendants themselves.

From reading the depositions, the court infers that the way things were supposed to work were that Mr. Jensen would make monthly payments of $982.90; Debtors would then make payments on the underlying mortgage; and when the mortgage was paid off (from Mr. Jensen's payments), the deed would then be recorded in Mr. Jensen's name.

For his part, Mr. Jensen paid Defendants $75,000 in cash, which Defendants used for their personal needs rather than pay down the underlying mortgage. And, for several months, Mr. Jensen made monthly payments totaling $6,899.

While the entire transaction was novel in the extreme, Mr. Jensen finds no fault in that description of the transaction, which is articulated either in his state court complaint or his non-dischargeability complaint.

## **PLAINTIFF'S COMPLAINT**

Mr. Jensen's complaint alleges fraud, misrepresentation or willful and malicious injury for the following specific acts:

1. Defendants represented that they owed the property, when they did not;
2. Defendants assured Mr. Jensen that he could construct a building thereon for $20,000; and
3. Defendants noted that if Mr. Jensen did not elect to purchase the property, that they were prepared to sell it to another.

# DISCUSSION

## A. Construction of a Building

After reviewing the entire record, including the most important evidence, the contract itself, the court finds and concludes that, with respect to the allegations concerning representations about the cost of putting a building on the land, and the discussions concerning whether other interested buyers existed for the property were not material misrepresentations upon which Mr. Jensen had a right to rely.

Whether the property was suitable for a building, and at what cost, was not a part of the written contract. Mr. Jensen should have done independent due diligence of his own, if that was his intention. He had no right to rely on his sellers' opinions on that subject, nor any right to rely on what they had learned with respect to their needs. Nor would any reliance on their opinions be justifiable. In the world of real estate transactions, these decisions, and the duty to investigate future possibilities for the land, lie squarely on the shoulders of the buyer.

A thorough review of the entire record, including the three depositions, reveals no actionable fraud with respect to a seller's opinion of the cost of a future building, or the ability to construct one. The only agreement was that the seller agreed that a building could be build on the land if Mr. Jensen desired to do so, and that any such construction would be "built to code." Beyond that, there is no other significant evidence which would justify a trial on that § 523(a)(2) count. Summary judgment on the construction of a building issue will be entered for the Defendants.

## B. Other Buyers

Whether other buyers did or did not exist is also not a material misrepresentation which justifies a non-dischargeability judgment. There is no cognizable element of fraud attributable to this discussion which rises to the level of granting judgment for the Plaintiff.

1    Even if such a statement was false, Mr. Jensen had no right to rely on it for any
2 purpose. He was free to evaluate, or obtain expert appraisal evidence, as to what the property was
3 worth to him, and there is no evidence that he intended to speculate on the land, and immediately
4 resell it. To the contrary, Mr. Jensen intended to keep the property, build a commercial structure
5 on it, and operate a business thereon. That is why he was buying the property, not to immediately
6 resell it. Because his intent was to remain in possession of the land, it was not material that other
7 parties either existed, or that other persons thought it might be worth more. He offered to buy the
8 land for $175,000, and the offer was accepted.

9    Therefore, summary judgment will be granted against Mr. Jensen on this issue.

## C. Ownership of the Land

13    The only element of fraud that prevents summary judgment is that Steve O'Brien did
14 not own the property. Therefore, it was a falsehood that he could "sell" the property to Mr. Jensen.
15 Mr. O'Brien apparently was not the owner, one of his affiliated entities was.[1]

16    Whether Mr. O'Brien could, however, at the end of the payment cycle, cause a
17 conveyance of the land to Mr. Jensen is a fact issue which remains for trial. The issue to be decided
18 at trial is whether Mr. O'Brien could, at the end of the payment cycle, convey clear title, as the
19 contract provides:

21    "Steve O'Brien will furnish clear title upon payoff."

23 If he can, then Mr. Jensen was not defrauded; if he cannot, then Mr. Jensen was. Only a trial, with
24 evidence on that issue, can determine the outcome. The case will therefore proceed to trial on this
25 limited issue.

---

[1] A title company could have quickly discovered and rectified this obvious problem.

### **D.  Final Note**

While the following is not pertinent to the case, the court can only note that had the parties had counsel at the beginning, or even a title company, the confusion about how to document this important transaction, how to account for Mr. Jensen's payments, and how and when the underlying mortgage would be paid off, would have been resolved.  In matters as important as the sale of land for $175,000, it is false economy not to attempt to do things right.  Virtually everything about this transaction was bizarre, unorthodox and a mess, and now the legal system has to do its best to make sense of it.

### **CONCLUSION**

Partial summary judgment will be granted in favor of the Defendants, and their motion for summary judgment on the grounds concerning construction of a building, and the existence of other buyers, will be granted.

The matter will proceed to trial on the only issue remaining, whether Mr. O'Brien could convey the land upon payoff of the deferred balance.

The Clerk is directed to set a firm trial date.

DATED AND SIGNED ABOVE.

COPIES to be sent by the Bankruptcy Notification Center ("BNC") to the following:

Kent S. Berk, Attorney for Plaintiff

Erin H. Walz, Attorney for Defendants

Office of the U.S. Trustee